## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO.  3:15-CV-369-MOC-DCK

| | | |
|---|---|---|
| **GREGORY TODD PAINTER, JR.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **JANE DOE et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER IS BEFORE THE COURT on Defendant Jane Doe's "…Second Motion To Dismiss And For Attorney's Fees" (Document No. 30);  Defendant Lt. Colonel Gary McGinnis's "…Motion to Dismiss" (Document No. 42);   and Defendants Jonathan Adams, Christine Reed Davis, Arthur R. Jackson, David Broome, Andrew Dies, Mark Lariviere, Katherine Hall-Hertel, The University of North Carolina at Charlotte and The Board of Governors of the University of North Carolina's "Motion To Dismiss Plaintiff's Amended Complaint"  (Document No. 43).  These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition.  Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motions be <u>granted in part</u> and <u>denied in part,</u> as set forth below.

### I.  FACTUAL BACKGROUND

Plaintiff was a student at the University of North Carolina at Charlotte ("UNC Charlotte") when he transferred from the Army Reserves to the North Carolina Army National Guard. (Document No. 28, p. 5).  "Plaintiff knowingly joined a combat-arm military occupational

specialty unit that was set to deploy to Iraq in December 2008." Id. "Plaintiff deployed for active duty in Iraq in December 2008, returning to the United States in April 2010." Id. Plaintiff re-enrolled at UNC Charlotte and began attending classes in the fall of 2010 after his tour of duty. Id. He became involved in the Reserve Officer Training Corps ("ROTC") program, and began taking steps to establish a chapter of the Pershing Rifles, a military fraternity, at UNC Charlotte. Id.

Plaintiff met Defendant Doe during the 2011-2012 school year when Defendant Doe enrolled in ROTC courses at UNC Charlotte. (Document No. 28, p. 6). Defendant Doe joined the Pershing Rifles fraternity, and through the fraternity pledging process, worked closely with and became friends with Plaintiff. Id. On the evening of May 13, 2012, Defendant Doe contacted Plaintiff to say she was "bored," and Plaintiff responded that he was watching a movie at his apartment and invited Defendant Doe to join him. Id. Defendant Doe arrived at the apartment, and the pair watched a movie together in the living room. Id. at 6-7. That night, Plaintiff and Defendant Doe engaged in sexual intercourse. Id. at 7. Plaintiff alleges that the sex was consensual. (Document No. 28, p. 6).

The next morning, "Defendant Doe told Plaintiff she wanted to leave Plaintiff's apartment early because she did not want his neighbor to see her." (Document No. 28, p. 7). Plaintiff alleges that despite spending the night with Plaintiff, Defendant Doe was then engaged in a romantic pursuit of Plaintiff's neighbor, James Rinck ("Rinck"), and had been spending nights with Rinck in her own bed for weeks before her encounter with Plaintiff. Id. Shortly thereafter, Defendant Doe began publically dating Rinck. Id. Nevertheless, Plaintiff and Defendant Doe remained in some contact throughout the month of May 2012. Id. at 7-8.

Plaintiff was scheduled to study abroad during the summer of 2012, but before departing, he received an email from Defendant Lt. Colonel Gary McGinnis ("McGinnis"), the Chair of the Military Science Department at UNC Charlotte, ordering Plaintiff to appear in his office. (Document No. 28, pp. 3, 9). When Plaintiff appeared, Defendant McGinnis informed Plaintiff that he would not be allowed to go on the study abroad trip because Defendant Doe had accused him of sexual assault, and that Plaintiff needed to be present for questioning. Id. On June 6, 2012, the alleged assault was reported to UNC Charlotte Police and Public Safety. Id. at 11. Further, on June 7, 2012, Defendant Doe filed a sexual assault complaint with the Charlotte-Mecklenburg Police Department, which ultimately led to an inconclusive investigation due to insufficient evidence. Id. at 10.

On August 13, 2012, UNC Charlotte held an evidentiary hearing before the Administrative Judicial Board (the "Board") to determine whether Plaintiff was responsible for committing sexual acts without Defendant Doe's consent. Id. at 13. The evidentiary hearing (the "Hearing") was conducted in a closed session, and the administrators announced at the beginning of the Hearing that disclosure of the details of the Hearing was a violation of both UNC Charlotte rules and federal law. (Document No. 44-2 at p. 3). The Hearing was transcribed by a court reporter into a 54-page transcript (the "Transcript") which contained explicitly sexual, personal, and sensitive testimony from both Plaintiff and Defendant Doe. Id. The Board ultimately found Plaintiff responsible for "Committing Sexual Acts without Consent." (Document No. 28, p. 14). Plaintiff was reprimanded by the school, and was subjected to disciplinary measures including: a no-contact order with Defendant Doe; suspension from school; loss of standing in the ROTC; and a writing assignment on the complexities of consent. Id. at 15-17.

On August 21, 2012, Plaintiff appealed the decision of the Board to the UNC Charlotte Board of Trustees, arguing that the presented evidence failed to sufficiently establish that it was more likely than not that Plaintiff had committed sexual acts upon Defendant Doe without her consent. Id. at 17-18. On August 24, 2012, Plaintiff was notified that his appeal had been denied. Id. Plaintiff appealed again, arguing that Rinck had encouraged Defendant Doe to label the sexual intercourse as "rape" and to report it, amongst other allegations. Id. at 19. After review, the Board of Trustees remanded the case for another hearing so that Plaintiff would be able to pursue two questions: (1) "can you ask her why she would find it important to make sure no one else saw her leave?" and (2) "can you ask her to explain why, after only us hanging out for a few times, she was already ready to stay over at my place on like—why was she all comfortable, after only hanging out one or two times, of sleeping at my apartment?" (Document No. 28, p. 21).

A second evidentiary hearing was held in Plaintiff's case on March 22, 2013. Id. at p. 21. The Board upheld its initial finding that Plaintiff was responsible for engaging in sexual acts without Defendant Doe's consent. (Document No. 28, p. 23). Again, Plaintiff appealed the Board's decision to the UNC Charlotte Board of Trustees, and his appeal was denied. Id. at pp. 23-24.

Ultimately, Plaintiff graduated from UNC Charlotte in 2013. Id. at 25. Plaintiff is currently a Senior Network Engineer with Cisco and continues to serve in an enlisted capacity with the North Carolina Army National Guard. Id. However, Plaintiff alleges that as a result of all Defendants' acts and omissions, his Government clearance has been flagged and he has been stopped from pursuing a career with the Government or the military. Id.

## II. PROCEDURAL BACKGROUND

Plaintiff initiated this action with the filing of a "Complaint" against UNC Charlotte, its Board of Governors, and Defendant Doe on August 12, 2015. (Document No. 1). Plaintiff filed an "Amended Complaint" (Document No. 28) on December 10, 2015. Plaintiff alleges five causes of action: (1) denial of due process under the Fourteenth Amendment during UNC Charlotte's Judicial Board Hearing which ultimately found him responsible for sexually assaulting Defendant Doe; (2) violation of substantive due process under the Fourteenth Amendment; (3) violation of the equal protection clause of the Fourteenth Amendment; (4) violation of 20 U.S.C. § 1681 ("Title IX") provisions against gender discrimination; and (5) common law fraud by Defendant Doe. (Document No. 28, pp. 25-29).

Defendant Doe filed her "…Second Motion To Dismiss And For Attorney's Fees" (Document No. 30) and her "Memorandum of Law…" (Document No. 31) on December 11, 2015. Plaintiff filed his "Brief in Opposition…" (Document No. 35) on December 21, 2015. Defendant Doe filed her "Reply Brief…" (Document No. 40) on December 31, 2015.

Defendant Colonel Gary L. McGinnis ("McGinnis") filed his "…Motion to Dismiss" (Document 42) and his "Memorandum in Support…" (Document No. 42-1) on January 15, 2016. Plaintiff filed his "Brief in Opposition…" (Document No. 45) on January 29, 2016. Defendant McGinnis filed his "Reply Brief in Support…" (Document No. 54) on February 7, 2016.

Defendants Jonathan Adams, David E Broome, Christine Reed Davis, Andrew Dies, Katherine Hall-Hertel, Arthur R. Jackson, Mark Lariviere, The Board of Governors of the University of North Carolina, The University of North Carolina, The University of North Carolina at Charlotte ("University Defendants") filed their "Motion to Dismiss Plaintiff's Amended Complaint" (Document No. 43) and their "Memorandum in Support…" (Document No. 43-1) on

January 15, 2016.  Plaintiff filed his "Brief in Opposition…" (Document No. 44) on January 29, 2016.  University Defendants filed their "Reply in Support…" (Document No. 53) on February 5, 2016.

Defendants' Motions to Dismiss were referred to the undersigned on February 8, 2016.  A memorandum and recommendation to the Honorable Max O. Cogburn, Jr. is now appropriate.

### III.  STANDARD OF REVIEW

The plaintiff has the burden of proving that subject matter jurisdiction exists.  See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case.  Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).  When a defendant challenges subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Richmond, 945 F.2d at 768.  The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id.  See also, Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009)

(quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007));  <u>see also</u>, <u>Robinson v. American Honda Motor Co., Inc.</u>, 551 F.3d 218, 222 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

<u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (quoting <u>Twombly</u>, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).  The court "should view the complaint in the light most favorable to the plaintiff."  <u>Mylan Labs, Inc. v. Matkar</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

## IV.  DISCUSSION

The undersigned will first consider Defendant Doe's motion, followed by Defendant McGinnis' motion, and finally University Defendants' motion.

### A.  Defendant Doe's "…Second Motion To Dismiss And For Attorney's Fees"

In Plaintiff's final cause of action, he alleges Defendant Doe committed common law fraud when she "made false representations and concealment of material facts when she accused Plaintiff

of engaging in sexual acts without her consent." (Document No. 28, pp. 29-30). Taking the facts Plaintiff has pleaded as true for the purposes of these motions only, the undersigned will assume Defendant Doe's allegations that Plaintiff raped her were false, and that Defendant Doe knew that these allegations were false when she made them to the Board at the UNC Charlotte disciplinary hearing. Id.; Fed. R. Civ. P. 12(b)(6).

In support of her motion to dismiss, Defendant Doe argues that Plaintiff fails to state a claim for fraud, that Plaintiff's claim is better characterized as defamation, and that the statute of limitations on defamation ran before Plaintiff filed this action. (Document No. 31, pp. 5, 7). In support of her argument, Defendant Doe cites the elements of fraud as:

> (a) that the defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury.

Odom v. Little Rock & I-85 Corp., 299 N.C. 86, 91-92 (1980) (emphasis omitted). Defendant Doe also argues that "reliance on alleged false representations must be reasonable." Cobb v. Pa Life Ins. Co., 715 S.E.2d 541, 549 (N.C. App., 2011).

Defendant Doe then goes on to assert that Plaintiff does not allege that Defendant Doe made a false representation of a material fact to him, which he then relied upon, but instead accuses her of making false representations to others, which then damaged Plaintiff. (Document No. 31, p. 6) (citing Document No. 28, pp. 29-30). Defendant Doe argues that the appropriate cause of action for when a defendant makes allegedly false written or spoken statements to third parties is defamation. (Document No. 31, p. 7) (citing Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 897-98 (N.C. App. 2002) (discussing torts of libel and slander)). Defendant Doe further argues

that the statute of limitations for defamation is one year, and the last alleged misrepresentations by Doe occurred at the March 22, 2013 hearing.  (Document No. 31, p. 7) (citing N.C. Gen. Stat. § 1-54(3);  (Document No. 28, p. 29)).

In response, Plaintiff contends that "common law fraud" encompasses both actual and constructive fraud against Defendant Doe.  (Document No. 35, p. 7).  Plaintiff also says that actual fraud is not the type of fraud he is alleging, but instead he is alleging "constructive fraud" based on the breach of a confidential or fiduciary relationship (Document No. 35, pp. 7, 10) (citing <u>Link v. Link</u>, 278 N.C. 181, 192 (1971) (noting that the relationship between a husband and wife is the most confidential of all relationships)).  Plaintiff then distinguishes actual fraud from constructive fraud, arguing that actual fraud arises "from arm's length transactions."  (Document No. 35, p. 7) (citing <u>Terry v. Terry</u>, 302 N.C. 77, 82 (1981) (internal quotations omitted)).  Plaintiff asserts that a constructive fraud claim is sufficient if it alleges:  (1) facts and circumstances which created a confidential or fiduciary relationship;  and (2) facts which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of her position of trust.  (Document No. 35, pp. 10-11) (citing <u>Searcy v. Searcy</u>, 215 N.C. App. 568, 573 (2011)).

Plaintiff describes his relationship with Defendant Doe as confidential.  (Document No. 35, p. 9).  Plaintiff cites as evidence the fact that he and Defendant Doe "worked closely and became friends" and how "Plaintiff considered Defendant [Doe] – like other Pershing Rifles pledges – to be a close friend who, like Plaintiff, was interested in various military pursuits." (Document No. 35, p. 9) (citing Document No. 28, p. 6).  Plaintiff also described Defendant Doe as a social friend who dated mutual friends, and how the pair communicated frequently through telephone and social media.  (Document No. 28, p. 6).  Plaintiff also implies that his sexual

encounter with Defendant Doe on May 13, 2012 and May 14, 2012 was the basis for a confidential relationship. (Document No. 35, p. 11).

Finally, Plaintiff contends that none of the five cases Defendant Doe marshals in support of her argument support her claims. (Document No. 35, pp. 6-7). See Suntrust Mortg., Inc. v. Busby, 651 F.Supp.2d 472, 477 (W.D.N.C. 2009) (alleging that the borrowers misrepresented their income when they secured the loans); Odom v. Little Rock & I-85 Corp., 299 N.C. 86, 91 (1980) (alleging that a mortgage corporation and purchasers in a real estate transaction defrauded them in an arms-length property transaction); Cox v. Johnson, 227 N.C. 69, 69-70 (1946) (alleging that the defendants had misrepresented the size of their tobacco allotment when they sold them their 73-acre farm in an arms-length property transaction); Cobb v. Pennsylvania Life Ins. Co., 215 N.C. App. 268, 272 (2011) (alleging breach of contract, fraud and unfair and deceptive trade practices in an action involving a disability insurance policy issued by the defendant, an insurance company); Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25 (2002) (alleging defamation in political advertising).

In reply, Defendant Doe argues that there is no legal basis for Plaintiff's claim that he was in a confidential or fiduciary relationship with her based on their social relationship. (Document No. 40, p. 5). In support of her position, Defendant Doe illustrates the types of relationships under North Carolina law that constitute confidential or fiduciary relationships. (Document No. 40, p. 5) (citing HAJMM Co. v. House of Raeford Farms, Inc., 328 N.C. 578, 588 (1991) (partners in a limited partnership); Terry v. Terry, 302 N.C. 77, 84 (1981) (two brothers); Link v. Link, 278 N.C. 181, 192 (1971) (husband and wife); Jacobs v. Physicians Weight Loss Ctr., 173 N.C. App. 663, 668 (2005) (physicians and patients); White v. Consolidated Planning, Inc., 166 N.C. App. 283 (2004) (brokers and clients); Whitley v. Carolina Clinic, Inc., 118 N.C. App. 523, 526 (1995)

(corporate directors and creditors); <u>Stilwell v. Walden</u>, 70 N.C. App. 543 (1984) (attorneys and clients); <u>In re Estate of Armfield</u>, 113 N.C. App. 467 (1984) (guardians and wards); <u>Mountain Top Youth Camp, Inc. v. Lyon</u>, 20 N.C. App. 694 (1974) (directors and corporations)).

The undersigned is persuaded by Defendant Doe's argument that Plaintiff's Amended Complaint fails to state a claim for fraud. Plaintiff makes allegations that "Defendant Doe's false representations and concealment of material facts did in fact deceive third parties and resulted in damage to Plaintiff," but nowhere does he claim that Defendant Doe's allegations deceived him or were intended to deceive him. (Document No. 28, pp. 29-30). Indeed, Plaintiff's own allegations consistently suggest that he knew that Defendant Doe was making allegedly "false representations." (Document No. 28). This makes Plaintiff's claim of actual fraud uncognizable, and seems to support Doe's contention that the allegations are more akin to a defamation claim.

The undersigned is further persuaded that Plaintiff fails to state a claim for which relief can be granted with respect to constructive fraud. The elements of constructive fraud are: (1) that there was a confidential or fiduciary relationship; and (2) the plaintiff was injured as a result of abuse of that relationship. <u>See</u> <u>White v. Consolidated Planning, Inc.</u>, 603 S.E.2d 147 (N.C. App. 2004). The undersigned is persuaded by Defendant Doe's argument that no confidential or fiduciary relationship exists between her and Plaintiff, the first element of any constructive fraud claim. (Document No. 40, p. 4) (citing <u>White v. Consolidated Planning, Inc.</u>, 603 S.E.2d 147 (N.C. App. 2004). A confidential relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." <u>Abbitt v. Gregory</u>, 160 S.E. 896, 906 (N.C. 1931).

In this jurisdiction, as Defendant Doe well demonstrates, a confidential or fiduciary relationship involves legal and intimate familial relationships, where there is a duty to act in

another party's interests.  (Document No. 40, p. 5) (internal citations omitted).  The undersigned is not persuaded there is any evidence of a transaction from which a confidential or fiduciary relationship would arise.  Plaintiff suggests a radical departure from existing case law concerning confidential relationships by arguing that the social relationship between him and Doe was sufficient to form a legal duty to protect his interests.  Furthermore, his citations to cases highlighting the confidential relationship of a husband and wife or other close relatives do not avail him, but instead counsel against adopting the sweeping position which he asks this Court to take. (Document No. 35, pp. 8, 10) (citing <u>Link</u>, 278 N.C. at 193;  <u>Terry</u>, 302 N.C. at 84).

The undersigned is not bound to accept as true the legal conclusion that Plaintiff was in a confidential or fiduciary relationship with Defendant Doe and declines to so find here.  <u>See</u> <u>Papasan</u>, 478 U.S. at 286.  As such, the undersigned concludes that Plaintiff fails to state a claim for constructive fraud.  Based on the foregoing findings, the undersigned will recommend that Plaintiff's fraud action against Defendant Doe be dismissed for failure to state a claim for which relief can be granted.

The undersigned will further recommend that Defendant Doe's request for attorney's fees be denied without prejudice.  The undersigned encourages the parties to resolve the question of appropriate attorney's fees.  In the event that an agreement cannot be reached, Defendant Doe may file a motion for attorney's fees and submit records of her expenses to the Court for further consideration.

## B.  Defendant McGinnis' "…Motion To Dismiss"

Defendant McGinnis' "…Motion to Dismiss" argues for dismissal based on failure to state a claim, immunity for service connected activity as a superior military officer to Plaintiff,

sovereign immunity, qualified immunity, and the statute of limitations. (Document No. 42-1, pp. 5-20).

Defendant McGinnis persuasively argues that Plaintiff's claims against him should be dismissed because they are time barred by the statute of limitations. (Document 42-1). He contends that the appropriate statute of limitations period for the action is three years. Id. (citing Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999); Adeniji v. U.S. Dept. of Homeland Sec., 2014 WL 1875034 (W.D.N.C. 2014)). He further contends that Plaintiff's claims for all actions taken by him before August 12, 2012 are time barred, since Plaintiff filed his Complaint on August 12, 2015. (Document No. 42-1, p. 20).

In response, Plaintiff argues that because Defendant Doe registered various sexual assault complaints "at Defendant McGinnis' behest," the disciplinary proceedings did not conclude until April 5, 2013 at the earliest, and that therefore, the statute of limitations has not run for claims against Defendant McGinnis. (Document No. 45, pp. 13-14).

In reply, Defendant McGinnis reiterates his position that any actions taken by him would have occurred before August 12, 2012, arguing that he met with Plaintiff and decided to cancel his trip on June 7, 2012. (Document No. 54, p. 10).

Generally, a motion to dismiss under Rule 12(b)(6) "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). However, courts may determine the merits of an affirmative defense at this stage of litigation if "all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint." Id. (internal quotation marks omitted).

Here, Plaintiff has alleged sufficient facts to determine the merits of Defendant McGinnis' defense. The statute of limitations in this case is three years. N.C. Gen. Stat. § 1–52(2) (2016)

(allowing three years to bring a case based "upon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it"). Plaintiff originally filed his Complaint on August 12, 2015. (Document No. 1).

The actions Plaintiff alleges Defendant McGinnis took all occurred before August 12, 2012. (Document No. 28, pp. 9-10). For example, Defendant McGinnis encouraging Defendant Doe to report the charges of sexual assault to the police would have occurred on or before June 7, 2012. (Document No. 28, pp. 10-11). Additionally, cancellation of the summer trip to Laos would have occurred before August 12, 2012. Id. at 9. Given that Defendant McGinnis' actions all occurred before August 12, 2012, the statute of limitations has run on all claims against him.

Based on the statute of limitations running for Defendant McGinnis, the undersigned will recommend that Defendant McGinnis' "…Motion to Dismiss" (Document No. 42) be granted for failure to state a claim. Because Defendant McGinnis' statute of limitations argument is sufficiently compelling to recommend dismissal of all claims against him, the undersigned will decline to address his other arguments for dismissal.

## C. University Defendants' "Motion to Dismiss Plaintiff's Amended Complaint"

Plaintiff alleges that University Defendants violated his right to procedural due process and his right to substantive due process under the Fourteenth Amendment. He also alleges that University Defendants discriminated against him on the basis of his gender, in violation of his right to equal protection under the law under the Fourteenth Amendment, and in violation of Title IX.

University Defendants' raise a number of arguments in their "Motion to Dismiss…" including lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. (Document No. 43-1, pp. 6-8). University Defendants also ask the Court to find that

Defendants Adams, Davis, Jackson, Dies, Lariviere, Hall-Hertel, and Broome are entitled to qualified immunity, that the statute of limitations bars consideration of some of Plaintiff's allegations, and that no punitive damages can be imposed. (Document No. 43-1, pp. 19-20).

### 1. Procedural Due Process

Turning first to Plaintiff's procedural due process claim, Plaintiff contends that University Defendants denied him procedural due process in the handling of the allegations against him. (Document No. 28, pp. 25-26). Specifically, he alleges numerous violations, including

> Having legal process commenced against him by Defendant Davis without any notice or opportunity to be heard whatsoever in the matter of the no-contact order; Being prohibited from even ascertaining with certainty whether his accuser was present for the August 2012 hearing; Being prohibited from even ascertaining with certainty whether his accuser was present either physically or remotely at the March 2013 hearing; Being prohibited from challenging his accuser's veracity in general at both hearings; Being prohibited from offering material exculpatory evidence at both hearings; Affirmatively assisting Plaintiff's accuser during both hearings by encouraging her, suggesting testimony and otherwise advocating on her behalf.

(Document No. 28, pp. 25-26). Additionally, Plaintiff argues that he was found responsible for an act that he did not commit, was punished by Defendant UNC Charlotte and suffered damage as a result. (Document No. 28, p. 26).

In support of their motion to dismiss, University Defendants argue that Plaintiff has no liberty or property interest in clearing his name, as none of them publicly accused him of rape. (Document No. 43-1, pp. 10-11). They further argue that although students have a property interest in not being excluded from school, the UNC Charlotte disciplinary hearing was held with adequate notice and the opportunity to be heard. (Document No. 43-1, p. 11) (citing Goss v. Lopez, 419 U.S. 565, 579 (1975)). Defendants assert that the requirements of procedural due process are that Plaintiff "had adequate notice of the charges against him, he had an opportunity to be heard by

disinterested parties, he was confronted by his accusers, and he had the right to have a record of the hearing reviewed by a student appellate body." (Document No. 43-1, p. 13) (quoting Henson v. Honor Committee of U.Va., 719 F.2d 69, 74 (4th Cir. 1983). Defendants claim that the Hearings in each case satisfied the requirements of procedural due process. (Document No. 43-1, pp. 13-14). Defendants further noted that Plaintiff was allowed to ask Defendant [Doe] two questions at a second disciplinary hearing on March 22, 2013, after an appeal to the UNC Charlotte Board of Trustees. (Document No. 53, p. 2).

In opposition, Plaintiff asserts that he was deprived of a property and liberty interest in remaining enrolled free from arbitrary state action, as well as a liberty and property interest in clearing his name after being publicly accused of rape. (Document No. 44, p. 6, 8) (citing Goss v. Lopez, 419 U.S. 565, 576 (1975); Henson v. Honor Committee of Univ. of Va., 719 F. 2d 69, 73 (4th Cir. 1983); Cobb v. The Rector and Visitors of the Univ. of Va., 69 F. Supp. 2d 815, 826 (W.D. Va. 1999)). Plaintiff also asserts that his inquiries in the disciplinary hearings were limited to the night of the alleged incident. (Document No. 44, pp. 11-12) (citing Document No. 28, p. 13). He alleges he was not allowed to use messaging communications with Defendant Doe to impeach her credibility. (Document No. 44, p. 12) (citing Document No. 28, pp. 13-14). He also alleges that the Board prohibited him from asking questions "about the circumstances surrounding the alleged incident; including communications Plaintiff had with Defendant Smith before and after the alleged incident." (Document No. 44, p. 12) (citing Document No. 28, p. 14). Plaintiff also notes that the Board of Trustees agreed that his due process was violated in the first Hearing for failure to allow two questions to be asked. (Document No. 44, p. 13) (citing Document No. 28, p. 21). Finally, Plaintiff alleges that he could not see Defendant Doe and ascertain she was the

person actually being asked the questions. (Document No. 44, p. 13) (citing Document No. 28, pp. 21-22).

In reply, University Defendants argue that the second disciplinary hearing mooted the due process violation found by the Board of Trustees in the first hearing. (Document No. 53, pp. 1-2). Additionally, University Defendants argue that Plaintiff cites no case law to support the inadequacy of procedures in the hearings. (Document No. 53, p. 2).

The undersigned finds that Plaintiff has adequately stated a claim for denial of procedural due process at this stage of the litigation. Plaintiff must present sufficient factual allegations to state: "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 145-46 (4th Cir. 2009) (citing Stone v. Univ. of Md. Med. Syst. Corp., 855 F.2d 167, 172 (4th Cir. 1988)). School disciplinary procedures satisfy the requirements of procedural due process where the accused student "had adequate notice of the charges against him, he had an opportunity to be heard by disinterested parties, he was confronted by his accusers, and he had the right to have a record of the hearing reviewed by a student appellate body." Henson v. Honor Committee of the University of Virginia, 719 F.2d 69, 74 (4th Cir. 1983); see also Haley v. Virginia Commonwealth Univ., 948 F. Supp. 573, 581 (E.D. Va. 1996); Herman v. University of S.C., 341 F. Supp. 226 (D.S.C. 1971), aff'd, 457 F.2d 902 (4th Cir. 1972).

First, the undersigned finds that the liberty interest implicated by the disciplinary actions taken by the University was Plaintiff's interest in remaining enrolled at school. Plaintiff's claim that he was clearing his name after being publicly accused of rape has no merit, as none of the University Defendants publicly accused Plaintiff of rape, but merely conducted a disciplinary

proceeding in a closed session protected by the Family Educational Rights and Privacy Act ("FERPA"). Plaintiff has not alleged any facts supporting a claim that University Defendants made a public accusation against him. (Document No. 28). Consequently, only the evidentiary hearings and subsequent disciplinary actions taken which resulted in suspension need be reviewed. Plaintiff does not allege that the no-contact order or cancellation of his study abroad trip, or any events prior to the disciplinary hearing on August 13, 2012, prevented him from remaining enrolled in school; rather the alleges that he was unable to attend a study abroad trip.

Second, the undersigned finds that Plaintiff was indeed deprived of his right to remain enrolled at UNC Charlotte by virtue of his suspension, and that the actions taken by University Defendants were state actions of a public university.

Third, taking the facts in the light most favorable to Plaintiff at this stage in the proceeding, the undersigned finds that Plaintiff has stated sufficient facts to support a claim that the procedures employed in his evidentiary hearings may have been inadequate. Specifically, Plaintiff alleges sufficient facts in his pleading to plausibly demonstrate he did not have the opportunity to be heard in his hearing, and he also may not have had the opportunity to confront Defendant Doe.

Plaintiff alleges that he "was ordered to direct his questions to the Board. Defendant Lariviere then decided, on an ad hoc basis, which questions he deemed suitable to ask Defendant Smith, and the Board then relayed a few, rephrased questions to Defendant [Doe]." (Document No. 28, pp. 13-14) (emphasis omitted). Plaintiff also alleges that he "was foreclosed from offering material, exculpatory evidence, without explanation." (Document No. 28, p. 22). For example, Plaintiff alleges there were text message communications that he wanted to introduce into evidence that he claimed would potentially impeach some of Defendant Doe's testimony as to her condition following the night in question. (Document No. 28, p. 14). Plaintiff argues that he was not given

the opportunity to be heard because Defendants sought "to curtail the nature and substance of evidence Plaintiff was allowed to present in his defense." Id. Furthermore, Plaintiff's Complaint notes that the UNC Charlotte Board of Trustees had determined that Plaintiff had been denied due process in his first hearing. (Document No. 28, p. 21). The undersigned is not persuaded by University Defendants' assertion that the second hearing necessarily cured the due process violation of the first hearing, if it was conducted using the same procedures.

In addition, Plaintiff asserts in his Complaint that he "was not permitted to verify whether the individual who allegedly appeared thereon was Defendant Smith or some other person" in his second disciplinary hearing. (Document No. 28, p. 21).

The undersigned expresses no opinion as to whether or not, with further fact finding, Plaintiff will be able to sustain the allegation that he did not have the opportunity to be heard in his disciplinary proceeding. However, on its face, the undersigned finds that the Complaint states a claim for a procedural due process violation. Consequently, the undersigned will recommend that the portion of University Defendants' "Motion to Dismiss Plaintiff's Amended Complaint" pertaining to Plaintiff's procedural due process claim be denied.

### 2. Substantive Due Process

Plaintiff also alleges a cause of action based on violation of his rights to substantive due process under the Fourteenth Amendment. (Document No. 28, pp. 26-27). Plaintiff argues that

> The actions of Defendants in narrowly pr[e]scribing the scope of Plaintiff's inquiries at each of the conduct hearings, in narrowly prescribing the nature and quantity of evidence Plaintiff was allowed to present in his behalf, in affirmatively assisting Plaintiff's accuser during her presentation "shocked the conscience" and thus violated substantive due process.

(Document No. 28, p. 26).

Defendants move to dismiss on the grounds that Plaintiff has failed to state a claim. Defendants observe that to succeed on a substantive due process claim, "a plaintiff must show that (1) it has a liberty or property interest;  (2) the state deprived it of this liberty or property interest; and (3) the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency."  (Document No. 43-1, pp. 15-16) (citing Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 862 (4th Cir. 2001) (quoting Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 827 (4th Cir. 1995))) (internal quotations omitted).  Defendants further argue that "it is not the role of federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion."  (Document No. 43-1, p. 15) (quoting Wood v. Strickland, 420 U.S. 308, 326 (1975)).

Defendants contend that Plaintiff failed to allege that Defendants' actions fell so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency or that their actions rose to the level of c shocking the conscience.   (Document No. 43-1, p. 16). Defendants also assert that Plaintiff "failed to allege any specific evidence that he was unable to present, and failed to allege that any of the Defendants were assisting Defendant [Doe]."  Id.

Plaintiff responds that the facts in their totality show a reasonable jury could "find that University officials failed to exercise their professional judgment or ventured beyond the pale of reasoned academic decision-making."  (Document No. 44, p. 15) (citing Regents of the University of Michigan v. Ewing, 474 U.S. 214, 227-28 (1985)).

Defendant replies by arguing Plaintiff failed to cite any case law to support his substantive due process claim.  (Document 53, p. 3).  Defendant also contends Plaintiff's arguments are conclusory.  Id.

The showing required for a substantive due process claim differs from a procedural due process claim. Procedural due process "is a guarantee of fair procedures, typically notice and an opportunity to be heard." Burch v. NC Department of Public Safety, 2016 WL 223710 *5 (E.D.N.C. January 19, 2016) (quoting Mora v. City of Gaithersburg, 519 F.3d 216, 230 (4th Cir. 2008) (quotations omitted)) (finding no substantive due process violation for Plaintiff's work reassignment from New Bern to Raleigh). Substantive due process "is an absolute check on certain government actions notwithstanding the fairness of the procedures used to implement them." Id. (citing Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995)).

"Governmental action offends substantive due process only where the resulting deprivation of life, liberty, or property is so unjust that no amount of fair procedure can rectify it." Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal, Va., 135 F.3d 275, 288 (4th Cir. 1998) (quoting Love, 47 F.3d at 123, cert. denied, 516 U.S. 813 (1995)) (holding no substantive due process violation where city officials constructed sewer lines for Plaintiff pursuant to writ of mandamus). When claiming a violation of substantive due process, conduct must be so arbitrary as to "shock the conscience." See County of Sacramento v. Lewis, 523 U.S. 833, 846-52 (1998). Defendant correctly notes the elements of a substantive due process claim as outlined in Sylvia Dev. Corp. v. Calvert County. 48 F.3d at 827, 829 n.7 ("to conclude that every agency decision reversed as 'arbitrary and capricious' under state or federal administrative law rises to the level of a constitutional claim would distort the substantive due process doctrine.").

As noted above, the undersigned is persuaded that Plaintiff has adequately stated an interest in remaining enrolled at UNC Charlotte free from arbitrary state action, and that the state deprived him of that interest by suspending him. However, the undersigned is not persuaded that Plaintiff's

allegations support a finding that University Defendants' actions were so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.

The undersigned reiterates that the courts have formulated procedural due process requirements that a university should follow in disciplining students by suspending them: adequate notice of the charges against him; an opportunity to be heard by disinterested parties; confrontation by his accusers; and the right to have a record of the hearing reviewed. See Henson v. Honor Committee of the University of Virginia, 719 F.2d 69, 74 (4th Cir. 1983); see also Haley v. Virginia Commonwealth Univ., 948 F. Supp. 573, 581 (E.D. Va. 1996); Herman v. University of S.C., 341 F. Supp. 226 (D.S.C. 1971), aff'd, 457 F.2d 902 (4th Cir. 1972). Therefore, the law contemplates that a procedure implemented by University Defendants which satisfies the elements laid out in Henson would be a fair process that could cure the alleged deficiencies which resulted in Plaintiff's suspension.

Plaintiff's case law is unpersuasive as well, as Regents of the University of Michigan v. Ewing was a case in which the Supreme Court found no substantive due process violation after a University terminated a student's enrollment. 474 U.S. at 227-28.

Furthermore, the facts alleged to purportedly support Plaintiff's substantive due process claim actually support his procedural due process claim. The essence of Plaintiff's claim is that University Defendants narrowly prescribing Plaintiff inquiries and evidence, as well as assisting Plaintiff's accuser, is a violation of substantive due process because it "shocked the conscience." (Document No. 28, p. 26). This argument confuses the issue. The source of Plaintiff's Complaint is that he was not given the opportunity to be heard in his disciplinary hearings, which is an issue of procedural due process. See Burch, 2016 WL 223710 at *5. He cannot merely invoke the vocabulary of substantive due process to state a claim.

The undersigned will recommend that Plaintiff's claim for violation of his substantive due process rights under the Fourteenth Amendment be dismissed.

### 3. Equal Protection and Title IX Gender Discrimination Claims

Plaintiff alleges claims of gender discrimination in violation of the equal protection clause of the Fourteenth Amendment and Title IX. (Document No. 28, pp. 27-29). Specifically, Plaintiff premises both claims on an allegation that

> no female student facing exclusion from UNCC for misconduct has been treated in the manner described herein before, during or after a student-conduct hearing. Further, no female student has been disciplined in the manner in which Plaintiff was disciplined following the shoddy, summary procedure invented for Plaintiff's case.

(Document No. 28, p. 27). In short, Plaintiff claims that Defendants' actions "were all based, in part, on Plaintiff's gender." (Document No. 28, p. 28).

Defendants move to dismiss, arguing that Plaintiff has failed to show "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." (Document No. 43-1, p. 17) (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Defendants further note that Plaintiff must "plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of the discriminatory animus." (Document No. 43-1, p. 17) (citing Tanyi v. Appalachian State University, Case No. 5:14–CV–170-RLV, 2015 WL 4478853 (W.D.N.C. July 22, 2015)).

Defendants argue that both Plaintiff's equal protection and Title IX complaints should be dismissed because Plaintiff alleged generally that "no female student" had been disciplined in the way Plaintiff was disciplined, without alleging any facts to support or create an inference that would support claims of gender discrimination. (Document No. 43-1, pp. 18-19).

Plaintiff responds by arguing that he has demonstrated Defendants were motivated by a gender-based discriminatory animus on the basis that the hearing members overtly assisted Defendant Doe, a female accuser, in presenting her case, and prevented him from presenting his case. (Document No. 44, pp. 15-16). Plaintiff further asserts that Defendant McGinnis cancelled his enrollment in the cultural exchange trip because "he was a male accused of rape by a female," and his trip was cancelled so he could be available for questioning. (Document No. 44, p. 16) (citing Document No. 28, p. 9). Finally, Plaintiff contends that the actions of Defendants Adams and Davis show that "males and females accused of rape at the University of North Carolina at Charlotte are afforded vastly different rights, protections, presumptions and process." (Document No. 44, p. 16) (citing Document No. 28, pp. 13-15).

In reply, Defendants argue that Plaintiff must allege "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and that Plaintiff failed to satisfy this requirement. (Document No. 53, p. 4) (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Defendants also argue that Plaintiff cannot support a Title IX claim based upon gender because his complaint only presents generalized conclusory allegations of disparate treatment. (Document No. 53, p. 9).

The undersigned finds that Plaintiff has failed to state a claim for violations of the equal protection clause of the Fourteenth Amendment and Title IX. As noted above, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In the case of a gender discrimination claim, a plaintiff has alleged sufficient

facts where it is shown "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (citing City of Cleburne, 473 U.S. 432, 439–40 (1985)).

Taking the facts in the light most favorable to Plaintiff, there is not sufficient support to indicate that the actions taken by UNC Charlotte against Plaintiff were motivated by discriminatory intent.  See, e.g., Cockerham v. Stokes County Bd. of Educ., 302 F. Supp. 2d 490, 497-98 (M.D.N.C. 2004) (finding plaintiff did not plead facts sufficient to support his allegation that his treatment was based on his sex).   Plaintiff makes many conclusory assertions of discriminatory intent, such as "[u]pon information and belief, Defendants Lariviere, Hall-Hertel, Dies and Broome were motivated by gender bias."  (Document No. 28, p. 22).  Even assuming that Defendants did treat Plaintiff differently from Defendant Doe at various points throughout the disciplinary process, Plaintiff does not plead sufficient facts to reasonably infer that such different treatment was based on gender.

Moreover, Plaintiff presents no factual support for a claim that he was treated differently than other students.  Plaintiff tries to dispense with the argument that the disparate treatment of Plaintiff and Defendant Doe was due to the nature of the offense in question by arguing that

> Upon information and belief, had Plaintiff been a female student accused of committing sexual acts without consent, the manner and conduct of his hearing would have been entirely different, for the reason that male and female student-accusers and males and females who stand accused of committing sexual acts without consent are treated differently at UNCC and UNC, and such disparate treatment is premised upon gender bias.

(Document No. 28, p. 22).  Such a statement is conclusory.  For Plaintiff to state a claim, he must allege facts supporting his contention that students receive disparate treatment at UNC Charlotte and the University of North Carolina as a whole.

Plaintiff presents no facts to plausibly support his allegation of disparate treatment. Accordingly, the undersigned will recommend Plaintiff's equal protection and Title IX claims be dismissed for failure to state a claim.

### 4.  Qualified Immunity for University Defendants

University Defendants also argue that they are entitled to qualified immunity for Defendants Adams, Davis, Jackson, Dies, Lariviere, Hall-Hertel, and Broome, and that these Defendants should consequently be dismissed from this action for any liability in their individual capacity.  (Document No. 43-1, pp. 19-22).  University Defendants correctly note that the resolution of a qualified immunity defense requires that the Court determine if "a constitutional right would have been violated on the facts alleged" and if "the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."  (Document No. 43-1, p. 20) (citing Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2006)). University Defendants further argue that "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." (Document No. 43-1, p. 21) (citing DiMeglio v. Haines, 45 F.3d 790, 803 (4th Cir. 1995)). Defendants also argue that qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowing violate the law."  (Document No. 43-1, p. 21) (citing Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998)).

University Defendants contend that Plaintiff cannot establish a constitutional right that was violated on the facts alleged, or that Plaintiff cannot establish the right was clearly established in

the context of the disciplinary hearing. (Document No. 43-1, p. 21). Moreover, University Defendants suggest that Plaintiff failed to allege that any of the Defendants' action was more than, at most, a mistake in judgment. (Document No. 43-1, p. 22).

In opposition, Plaintiff reasserts his position that he had a liberty and property interest in remaining enrolled and not being excluded from attending the University, and that he had an interest in clearing his name. (Document No. 44, p. 18). Plaintiff also reasserts that University Defendants violated his right to procedural due process. Id. Plaintiff then claims that "it would strain the imagination to suggest a set of facts in which reasonable Defendants would have been unaware of Plaintiff's clearly established due process rights, particularly where – as here – they were actors involved in a process set up by their employer specifically to administer – albeit failingly – said rights." (Document No. 44, p. 18).

In reply, University Defendants argue that Plaintiff failed to state how the individual-named Defendants' conduct violated a clearly established statutory or constitutional right which a reasonable person would have known. (Document No. 53, p. 6) (citing Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). They also reiterate that the individually named Defendants are entitled to qualified immunity. (Document No. 53, p. 6).

"Government officials performing discretionary functions are shielded from civil liability to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The right of the plaintiff must be established so clearly that a reasonable official would know what he was doing violates that right. Slattery, 939 F.2d at 216 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). A successful

qualified immunity defense results in government officials being dismissed from the lawsuit in their individual capacity.  See, e.g., Burch, 2016 WL 223710 at *11.

As discussed above, Plaintiff has adequately stated a claim for violation of his procedural due process rights.  However, Plaintiff's due process rights in the context of his University disciplinary hearing were not clearly established such that a reasonable officer would have known he was violating Plaintiff's rights.  As noted previously, University Defendants made judgments over the course of the administrative proceeding to ask or not ask questions to Defendant Doe and Defendant Adams on behalf of the Plaintiff, as well as to limit certain evidence.  (Document No. 28, pp. 13-14, 21-22).  University Defendants also allowed Plaintiff to testify.  (Document No. 28, p. 23).

Taking the facts as alleged by the Plaintiff, the undersigned concludes the actions of University Defendants did not violate *clearly established* due process rights.  Bailey, 349 F.3d at 731, 739.  A reasonable person in University Defendant's position could mistakenly interpret "the opportunity to be heard" to afford limits on the types of evidence and questions asked at a student disciplinary hearing, and end up going too far in restricting the rights of a student to ask questions or present evidence.  See Goss v. Lopez, 419 U.S. 565, 579 (1975).  Indeed, the law on due process in student disciplinary proceedings deliberately leaves some ambiguity as to how much evidence and questioning a student must be allowed.  See Goss, 419 U.S. at 579 (finding the required protections of an educational disciplinary hearing need not mirror a full-scale adversary proceeding);  Henson v. Honor Committee of U.Va., 719 F.2d 69, 74 (4th Cir. 1983) ("In the academic setting particularly, the Supreme Court has recognized that the requirements of due process may be satisfied by something less than a trial like proceeding.").  Therefore, it would not be clear to an objectively reasonable officer the extent to which questioning or presentation of

evidence could be limited in a quasi-judicial student disciplinary proceeding such as Plaintiff's hearings, necessitating an appellate procedure such as the one used by the UNC Charlotte Board of Trustees. (Document No. 28, p. 21).

Accordingly, the undersigned will recommend that Defendants Adams, Davis, Jackson, Dies, Lariviere, Hall-Hertel, and Broome be dismissed from the case in their individual capacity, as qualified immunity properly applies to them.

### 5. Statute of Limitations

University Defendants argue that the statute of limitations for the offenses in question is three years. (Document No. 53, pp. 6-7) (citing Owens v. Okure, 488 U.S. 235, 236 (1989) (holding the courts will use the residual personal injury statute of limitations from state law to decide §1983 violations); National Advertising Co. v. Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991), cert. denied, 504 U.S. 931 (1992) (noting N.C. Gen. Stat. § 1–52(2), which establishes a three-year limitations period for lawsuits based on "liability created by statute, either state or federal"); Wilmink v. Kanawha Cnty. Bd. of Educ., 214 F. App'x 294, 296 n.3 (4th Cir. 2007) (per curiam) (borrowing a three year statute of limitations for Title IX claims under North Carolina law); N.C.G.S. § 1–52(16) (2015).

University Defendants note that Plaintiff filed his Complaint on August 12, 2015. (Document No. 53, pp. 6-7). On this basis, University Defendants argue that "any of the Defendants' actions that occurred prior to August 12, 2012 are barred by the statute of limitations." (Document No. 53, p. 7). Specifically, University Defendants highlight Plaintiff's statement that "[t]he deprivation of Plaintiff's due process rights began the first instant he learned of Defendant Smith's allegations from Defendant McGinnis," which University Defendants contend occurred prior to August 12, 2012. (Document No. 53, p. 7) (citing Document No. 28, p. 9).

Plaintiff argues that the parties agree that the two evidentiary hearings took place on August 13, 2012 and March 22, 2013. (Document No. 44, p. 19). Plaintiff then argues that "Defendants are in error when they contend that the events in Plaintiff's case occurred up to August 11, 2012." (Document No. 44, p. 19) (quoting Document No. 43-1, p. 22). Finally, Plaintiff proceeds to recount the facts of the case, from the August 13, 2012 hearing and through the March 22, 2013. (Document No. 44, pp. 19-20).

Generally, a motion to dismiss under Rule 12(b)(6) "cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). However, courts may determine the merits of an affirmative defense at this stage of litigation if "all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint." Id. (internal quotation marks omitted).

Here, Plaintiff has alleged sufficient facts to determine the merits of University Defendants' defense. The statute of limitations in this case is three years. N.C. Gen. Stat. § 1–52(2) (2016) (allowing three years to bring a case based "upon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it"). Plaintiff originally filed his Complaint on August 12, 2015. (Document No. 1). The evidentiary hearings took place on August 13, 2012, and March 22, 2013 respectively. (Document No. 28, pp. 13, 21). As such, it appears that most, if not all, of Plaintiff's allegations against University Defendants occurred within the relevant statute of limitations period.

The undersigned will recommend that University Defendants motion be denied as to their statute of limitations argument.

**6. Punitive Damages**

University Defendants also move to dismiss Plaintiff's claim for punitive damages on the grounds that Defendants in this action are government agencies and are immune from punitive damages.  (Document No. 43-1) (citing 42 U.S.C. §1981a(b)(1);  N.C. Gen. Stat. §§ 150B-2(1), 116-4)).  Plaintiff responds by noting he is only seeking punitive damages against Defendants in their individual capacities, and not in their official state capacities.  (Document No. 44, p. 21) (citing Document No. 28, p. 31).

Because the undersigned will recommend that the University Defendants be dismissed from the case in their individual capacities based on qualified immunity, the undersigned will also recommend that University Defendants' motion be granted with respect to dismissing Plaintiff's request for punitive damages.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant Jane Doe's "…Second Motion To Dismiss" (Document No. 30) be **GRANTED**.  The undersigned will further recommend Defendant Doe's request for attorney's fees be **DENIED WITHOUT PREJUDICE**, as directed herein.

**IT IS FURTHER RECOMMENDED** that Defendant McGinnis's "…Motion to Dismiss" (Document No. 42) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendants Jonathan Adams, Christine Reed Davis, Arthur R. Jackson, David Broome, Andrew Dies, Mark Lariviere, Katherine Hall-Hertel, The University of North Carolina at Charlotte and The Board of Governors of the University of North Carolina's "Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 43) be **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**SO RECOMMENDED**.

Signed: July 31, 2016

David C. Keesler
United States Magistrate Judge