| | | |
|---|---|---|
| **GREGORY TODD PAINTER JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **JANE DOE** | ) | |
| **GARY MCGINNIS** | ) | |
| **JONATHAN ADAMS** | ) | |
| **CHRISTINE REED DAVIS** | ) | |
| **ARTHUR R. JACKSON** | ) | |
| **THE UNIVERSITY OF NORTH CAROLINA** | ) | |
| **DAVID E BROOME** | ) | |
| **THE BOARD OF GOVERNORS OF THE** | ) | |
| **UNIVERSITY OF NORTH CAROLINA** | ) | |
| **ANDREW DIES** | ) | |
| **MARK LARIVIERE** | ) | |
| **KATHERINE HALL-HERTEL** | ) | |
| **THE UNIVERSITY OF NORTH CAROLINA AT** | ) | |
| **CHARLOTTE,** | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on review of a Memorandum and Recommendation issued in this matter. In the Memorandum and Recommendation, the magistrate judge advised the parties of the right to file objections within 14 days, all in accordance with 28, United States Code, Section 636(b)(1)(c). Objections have been filed by plaintiff within the time allowed and the defendants have filed timely responses.

## FINDINGS AND CONCLUSIONS

### I.     Standard of Review of a Memorandum and Recommendation

The *Federal Magistrates Act of 1979*, as amended, provides that "a district court

shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a careful review of the magistrate judge's recommendation.

In the Memorandum and Recommendation, David C. Keesler, United States Magistrate Judge, recommended that defendants Motions to Dismiss (#s 30, 42, & 43) be granted in part and denied in part. Specifically, Judge Keesler recommended that: defendant Jane Doe's Second Motion to Dismiss (#30) be granted, that her request for attorney's fees be denied without prejudice; defendant Gary McGinnis's Motion to Dismiss (#42) be granted; and that defendants Jonathan Adams, Christine Reed Davis, Arthur R. Jackson, David Broome, Andrew Dies, Mark Lariviere, Katherine Hall-Hertel, The University of North Carolina at Charlotte, and The Board of Governors of the University of North Carolina's ("the University Defendants") Motion To Dismiss Plaintiff's Amended Complaint (#43) be granted in part and denied in part.

## II.     Rule 12(b)(6) Standard

In determining whether a claim can survive a motion under Rule 12(b)(6), the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) that the "no set of facts" standard only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id. at 563.  The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id. at 561 (alteration in original).  Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement." Id., at 557.  Instead, a claimant must plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id. at 570 (emphasis added).

After deciding Twombly, the Court revisited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added).  The Court held that:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability ...."  Id. While the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks omitted). However, to survive a motion to dismiss, a complaint must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.  To survive a motion to dismiss, a plaintiff need not demonstrate that his right to relief is probable or that alternative explanations are less likely; rather, he must merely advance his claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  If his explanation is plausible, the complaint survives a motion to dismiss

under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556.

## III.  Factual Background

The court has first carefully reviewed Judge Keesler's recitation of the facts alleged in the Amended Complaint.  As the summary has portrayed the allegations of the Amended Complaint in a light most favorable to plaintiff, the court adopts such factual summary fully. The brief summary herein is drawn from that review and is intended aid further review.

Plaintiff was a student at the University of North Carolina at Charlotte ("UNC Charlotte") when he transferred from the Army Reserves to the North Carolina Army National Guard. Amended Complaint (#28) at 5.   After a two-year tour of duty in Iraq, plaintiff re-enrolled at UNC Charlotte and began attending classes in the fall of 2010. Id. After his return, he became involved in the Reserve Officer Training Corps ("ROTC") program, and began taking steps to establish a chapter of the Pershing Rifles, a military fraternity, at UNC Charlotte. Id.

Plaintiff met Defendant Doe during the 2011-2012 school year when Defendant Doe enrolled in ROTC courses at UNC Charlotte.  Id. at 6.  Defendant Doe also joined the Pershing Rifles fraternity, and through the fraternity pledging process, worked closely with and became friends with plaintiff. Id.

Relevant to the claims in this case, on the evening of May 13, 2012, Defendant Doe

contacted plaintiff to say she was "bored," and plaintiff responded that he was watching a movie at his apartment and invited Defendant Doe to join him. Id. Defendant Doe arrived at the apartment, and the pair watched a movie together in the living room. Id. at 6-7. That night, plaintiff and Defendant Doe engaged in sexual intercourse. Id. at 7. Plaintiff alleges that the sex was consensual. Id. at 6.

According to plaintiff, the next morning "Defendant Doe told Plaintiff she wanted to leave Plaintiff's apartment early because she did not want his neighbor to see her." Id. at 7. Plaintiff alleges that despite spending the night with him, Defendant Doe was then engaged in a relationship with plaintiff's neighbor, J.R., and had been spending nights with him in her own bed for weeks before her encounter with plaintiff. Id. Shortly thereafter, Defendant Doe began publically dating J.R. Id. Plaintiff and Defendant Doe remained in some contact throughout the month of May 2012. Id. at 7-8.

Plaintiff was scheduled to take a study abroad trip through the ROTC program to Laos during the summer of 2012, but before departing, he received an email from Defendant Lt. Colonel Gary McGinnis ("Defendant McGinnis"), the Chair of the Military Science Department at UNC Charlotte, ordering plaintiff to appear in his office. Id. at 3, 9. When plaintiff appeared, Defendant McGinnis informed Plaintiff that he would not be allowed to go on the study abroad trip because Defendant Doe had accused him of sexual assault, and that plaintiff needed to be present for questioning. Id.

On June 6, 2012, the alleged assault was reported to UNC Charlotte Police and Public Safety. Id. at 11. Further, on June 7, 2012, Defendant Doe filed a sexual assault complaint with the Charlotte-Mecklenburg Police Department, which ultimately led to an

inconclusive investigation due to insufficient evidence. Id. at 10.

On August 13, 2012, UNC Charlotte held an evidentiary hearing before the Administrative Judicial Board (the "Board") to determine whether plaintiff was responsible for committing sexual acts without Defendant Doe's consent. Id. at 13. The evidentiary hearing (the "Hearing") was conducted in a closed session, and the administrators announced at the beginning of the Hearing that disclosure of the details of the Hearing was a violation of both UNC Charlotte rules and federal law. Hearing Transcript (#44-2) at 3. The Board ultimately found plaintiff responsible for "Committing Sexual Acts without Consent." Amended Complaint (#28) at 14. Plaintiff was reprimanded by the school, and was subjected to disciplinary measures including: a no-contact order with Defendant Doe; suspension from school; loss of standing in the ROTC; and a writing assignment on the complexities of consent. Id. at 15-17.

On August 21, 2012, plaintiff appealed the decision of the Board to the UNC Charlotte Board of Trustees, arguing that the presented evidence failed to sufficiently establish that it was more likely than not that plaintiff had committed sexual acts upon Defendant Doe without her consent. Id. at 17-18. On August 24, 2012, plaintiff was notified that his appeal had been denied. Id. Plaintiff appealed again, arguing that J.R. had encouraged Defendant Doe to label the sexual intercourse as "rape" and to report it, amongst other allegations. Id. at 19. After review, the Board of Trustees remanded the case for another hearing so that plaintiff would be able to pursue two questions: (1) "can you ask her why she would find it important to make sure no one else saw her leave?" and (2) "can you ask her to explain why, after only us hanging out for a few times, she was already

ready to stay over at my place on like—why was she all comfortable, after only hanging out one or two times, of sleeping at my apartment?" Id. at 21.

A second evidentiary hearing was held in plaintiff's case on March 22, 2013. Id. at 21. The Board upheld its initial finding that plaintiff was responsible for engaging in sexual acts without Defendant Doe's consent. Id. at 23. Again, plaintiff appealed the Board's decision to the UNC Charlotte Board of Trustees, and his appeal was denied. Id. at 23-24.

Ultimately, plaintiff graduated from UNC Charlotte in 2013. Id. at 25. Plaintiff is currently a Senior Network Engineer with Cisco and continues to serve in an enlisted capacity with the North Carolina Army National Guard. Id. However, plaintiff alleges that as a result of all defendants' acts and omissions, his Government clearance has been flagged and he has been stopped from pursuing a career with the Government or the military. Id.

IV.  Discussion

A.  Review of the University Defendants' Motion to Dismiss

As to the University Defendants' Motion to Dismiss, Judge Keesler determined that plaintiff sufficiently stated a claim for denial of procedural due process and recommended that this court deny the University Defendants' Motion to Dismiss as to such claim. He further recommended that plaintiff's substantive due process claim be dismissed. As to plaintiff's claims of gender discrimination under Title IX and the Equal Protection Clause, Judge Keesler recommended that those claims be dismissed. Judge Keesler recommended that the individual University Defendants' Motion to Dismiss based on qualified immunity be granted as to claims made against them in their individual capacities. Finally, Judge

Keesler recommended that the University Defendants Motion to Dismiss based on the statute of limitations be denied and that their Motion to Dismiss the "punitive damages claim" be granted.

### 1. Procedural Due Process Claim

Judge Keesler first determined that plaintiff has stated a claim for violation of procedural dues process in his Amended Complaint. There has been no objection filed to such recommendation by the University Defendants. After close review of the magistrate judge's reasoning along with the pleadings, the court determines it is correct and will fully affirm that determination.

### 2. Substantive Due Process Claim

Judge Keesler next considered plaintiff's claim of substantive due process and after an accurate discussion of the law and facts determined that plaintiff had not stated a plausible claim for a substantive due process violation. Judge Keesler determined that the allegations of facts that plaintiff contends supports a substantive due process claim actually support his procedural due process claim, thereby confusing the issue. Plaintiff objects and contends that the facts he alleged support a substantive due process claim.

Substantive due process is difficult to allege as the circumstance that will give rise to a claim rarely occur. "Broadly speaking, the substantive due process provision of the Fourteenth Amendment protects against egregious, arbitrary governmental conduct. Only governmental conduct that 'shocks the conscience' is actionable as a violation of the Fourteenth Amendment." Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001). While missteps in the course of providing a citizen with due process can form the

basis of a procedural due process claim, the fact that government officials at least tried to afford a citizen with notice and an opportunity to be heard – however allegedly bungled and prescribed that process may have been – will in most instances foreclose a substantive due process claim.

After *de novo* review of the Amended Complaint and arguments, the court concludes that allegations that the University Defendants narrowly prescribed plaintiff's inquiries and assisted the accuser during the disciplinary process is a claim of procedural rather than substantive due process. Under <u>Burch v. NC Department of Public Safety</u>, 2016 WL 223710 *5 (E.D.N.C. January 19, 2016), allegations that a person is not given an opportunity to be heard at a disciplinary hearing constitutes a claim of procedural due process. Put another way, taking all of the allegations against the University Defendants as true, plaintiff does not state a claim for a violation of his substantive due process protections because his allegations do not include factual assertion which, when considered individually or taken together, amount to claims of egregious, arbitrary governmental conduct or conduct that "shocks the conscience." The court overrules the Objection as it is clear to this court that plaintiff has not come forward with plausible allegations of fact that could support a claim that these defendants violated his substantive due process protections.

### 3. Gender Discrimination Claims

Judge Keesler next addressed the University Defendants' Motion to Dismiss plaintiff's gender discrimination claims under the Equal Protection Clause of the Fourteenth Amendment and Title IX. In his Amended Complaint, plaintiff alleged, as

follows:

> no female student facing exclusion from UNCC for misconduct has been treated in the manner described herein before, during or after a student-conduct hearing. Further, no female student has been disciplined in the manner in which Plaintiff was disciplined following the shoddy, summary procedure invented for Plaintiff's case.

Amended Complaint (#28) at 27.

In this claim, plaintiff is contending that he was not just denied due process, he was denied due process because he is a male. In moving to dismiss, the University Defendants took issue with plaintiff's general allegation that "no female student" had been treated in a similar manner without alleging facts that would support an inference of gender discrimination. Ultimately, the University Defendants argue that plaintiff has failed to allege that he had been treated differently than others with whom he was similarly situated and that the treatment he received was the result of intentional or purposeful discrimination. Judge Keesler determined that plaintiff had failed to state a claim under either the Equal Protection Clause of the Fourteenth Amendment or Title IX. Plaintiff has objected to this recommendation.

In considering the Objection, the court has read the allegations in the Amended Complaint (#28) put forward in support of the claims for violation of the Equal Protection Clause of the Fourteenth Amendment and Title XI. In conjunction with that review, the court has gone back and read the briefs of the respective parties and considered the cases cited. Essential to plaintiff's claim of gender discrimination is a requirement that he allege facts which, if later proven, could show "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of

intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001) (citation omitted).

The only specific person plaintiff can point to as receiving better treatment in the process is Defendant Doe. Defendant Doe is not, however, similarly situated as she was the accuser in the process not the accused. In claiming that the University Defendants treated him differently in the school disciplinary process, plaintiff must be able to allege that the University Defendants treated persons accused of misconduct differently based on gender, not that they treated the accuser differently during this process. Read in a light most favorable to plaintiff, he only claims that Defendant Doe was treated more favorably than he was because she was a female and that certain University Defendants were biased. Such contentions of gender bias are not sufficient to advance a claim of gender bias as those contentions are merely conclusory. Additionally, plaintiff makes no factual allegations the University Defendants treated him different than female students similarly situated to him, to wit, students accused by other students of sexual misconduct. While plaintiff asserts that the University Defendants treat males accused of sexual misconduct differently than females accused of committing non-consensual sexual acts and that such disparate treatment is based on gender bias, Amended Complaint (#28) at 22, plaintiff points to no particular case where he believes such disparate treatment occurred making this allegation categorically conclusory.

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a). Plaintiff fails to point the court to

any allegations which move his contentions from conceivable to plausible as he has not alleged any particular case where a female student accused of sexual misconduct was treated differently than he was treated. Twombly, supra. After *de novo* review, the court will overrule plaintiff's Objection, affirm Judge Keesler's recommendation, and dismiss plaintiff's Equal Protection Clause and Title IX gender discrimination claims.

### 4. Individual Capacity Claims and Qualified Immunity

Plaintiff also objects to Judge Keesler's recommendation that the procedural due process claims against the individual University Defendants (in their individual capacities only) be dismissed based on qualified immunity. "Government officials performing discretionary functions are shielded from civil liability to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The right of the plaintiff must be established so clearly that a reasonable official would know what he was doing violates that right. Slattery, 939 F.2d at 216 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987.

While the right to procedural due process is well established, due process rights in the context of a college disciplinary hearing are not clearly established such that a reasonable school employee would have known he or she was violating plaintiff's rights. Goss v. Lopez, 419 U.S. 565, 579 (1975) (finding the required protections of an educational disciplinary hearing need not mirror a full-scale adversary proceeding); Henson v. Honor Committee of U.Va., 719 F.2d 69, 74 (4th Cir. 1983) ("In the academic setting particularly, the Supreme Court has recognized that the requirements of due process may be satisfied

by something less than a trial like proceeding.").

The court has closely read plaintiff's allegations of what he recalls occurring during the disciplinary hearing process as well as the transcripts of those proceedings; while plaintiff may be able to convince a jury that such process violated his procedural due process rights in the context of a school disciplinary hearing, the University Defendants sued in their individual capacities cannot be held personally liable. As the metes and bounds of a quasi-judicial student disciplinary proceeding are not set in stone, the court cannot find that it would have been clear to any reasonably objective hearing officer that in limiting plaintiff's questioning of witnesses, his giving of his own testimony, or his presenting evidence that such actions would violate the protections afforded under Due Process in the context of a school disciplinary proceeding. See Goss v. Lopez, 419 U.S. 565, 581 (1975). As better explained in the above discussion as to why plaintiff states a claim for violation of procedural due process but does not state a claim for a violation of substantive due process, it is readily apparent that plaintiff's complaint is not that he denied due process in its entirety, but with the limits the University Defendants placed on his ability to testify, question witnesses, and present his own evidence. Thus, in the amorphous world of school disciplinary hearings which depends on the conduct at issue and the consequences of the disciplinary action ultimately taken, the individual University Defendants actions, while possibly in violation of procedural due process protections, cannot be characterized as being in violation of clearly established statutory or constitutional rights of which a reasonable person would have known. Slattery, supra. In so determining, the court has considered Castle v. Marquardt, 632 F. Supp. 2d 1317, 1339

(N.D. Ga. 2009),[1] a case where the district court denied qualified immunity to school administrators who had allegedly deprived the student of procedural due process. There, the court found that suspension of a college student on non-academic grounds without a pre-suspension hearing was a deprivation of a clearly established right. Id. at 1339. In this case, the individual University Defendants clearly recognized that plaintiff had a right to a hearing and notice of that hearing under clearly established law and afforded plaintiff both notice and a hearing. Goss, supra. There simply is no clearly established case law concerning the minimum requirements needed to satisfy procedural due process in this particular context. The court will, therefore, dismiss University Defendants Adams, Davis, Jackson, Dies, Lariviere, Hall-Hertel, and Broome in their individual capacities only.

### 5. Motion to Dismiss Based on the Statute of Limitations

As to the University Defendant's Motion to Dismiss based on the statute of limitations, Judge Keesler recommended that such motion be denied. He determined that that plaintiff's claims against the University Defendants were for acts occurring within the three year statute of limitations. No objection has been filed. The court concurs as the proceedings with which plaintiff takes issue occurred less than three years from the date he filed his original Complaint. The court finds that Judge Keesler's factual determination are supported by the pleadings and that his legal conclusions are consistent with current case law. Such determination is affirmed.

---

[1]     Aff'd sub nom. *Castle v. Appalachian Tech. Coll.*, 627 F.3d 1366 (11th Cir. 2010), opinion vacated and superseded, 631 F.3d 1194 (11th Cir. 2011), and aff'd sub nom. *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194 (11th Cir. 2011).

### 6.     Punitive Damages Claim

As to the University Defendant's Motion to Dismiss the punitive damages claim, plaintiff advises (in light of such defendants' argument that this court cannot impose punitive damages against the State of North Carolina) that such claims are limited to the University Defendants in their individual capacities.

Foremost, punitive damages are a remedy and not a freestanding claim or cause of action.  Punitive damages may be sought in an *ad damnum* clause or a prayer for relief in conjunction with some tort, proof of which would support a request for punitive damages.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it.  If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all."  J. Stein, *Damages and Recovery* § 195 at 389 (1972).  North Carolina follows this general rule of law.

Hawkins v. Hawkins, 101 N.C.App. 529, 532 (1991).  In North Carolina, punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

As a matter of law, because these individual defendants enjoy immunity from suit on the underlying causes of action (as discussed above) in their individual capacities, plaintiff's claims for punitive damages against them will also be dismissed as a claim for punitive damages is not a freestanding claim.

### B.     Plaintiff's Objections to Recommendation that Defendant Doe's Second Motion to Dismiss be Granted

Plaintiff alleged that Defendant Doe, the fellow student who accused him of sexual misconduct and rape, committed common law fraud when she "made false representations

and concealment of material facts when she accused Plaintiff of engaging in sexual acts without her consent." Amended Complaint (#28) at 29-30. Defendant Doe argues that plaintiff has failed to state a claim for fraud and that the allegations are better characterized as defamation, as to which the one-year statute of limitations ran before this action was filed.

The court has given careful consideration to plaintiff's Objection (#65). Review of the recommendation reveals that Judge Keesler considered the Amended Complaint in a light most favorable to plaintiff by assuming that Defendant Doe's accusations against him were false and that she knew they were false when she made them during the disciplinary proceedings. As did Judge Keesler, the court has assumed that all of plaintiff's allegations of fact are true, but despite plaintiff's arguments, it is clear that the facts alleged cannot constitute common-law fraud as plaintiff does not and cannot plausibly allege that any false statement made to the Board was a statement *plaintiff* reasonably relied upon. Odom v. Little Rock & I-85 Corp., 299 N.C. 86, 91-92 (1980).

The harm for which plaintiff seeks redress is not that he was deceived by Defendant Doe's allegations of rape or sexual misconduct, but that the Board was deceived by Defendant Doe's allegedly false statements. A claim that a person's false statements deceived a third party is a claim for defamation, Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 897-98 (N.C. App. 2002), which does not morph into a claim for fraud simply because the statute of limitations ran before plaintiff could file his action.

Plaintiff's back up assertion that he is instead alleging "constructive fraud" fairs no better. His assertion that he and Defendant Doe were in a confidential or fiduciary

relationship is a conclusory argument of law, which finds no support in law. Short of marriage, <u>Link v. Link</u>, 278 N.C. 181, 192 (1971), or other close familial relationship, <u>Terry v. Terry</u>, 302 N.C. 77, 84 (1981) (brothers), simply being classmates, friends, or even friends with benefits does not give rise to the "confidential or fiduciary relationships" upon which a claim of constructive fraud can be based. A confidential relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." <u>Abbitt v. Gregory</u>, 160 S.E. 896, 906 (N.C. 1931). If plaintiff's theory were correct, confidential relationships would arise from a myriad of everyday social interactions.

Turning to the elements of constructive fraud, the court has reviewed the Amended Complaint for plausible allegations that: (1) there was a confidential or fiduciary relationship; and (2) the plaintiff was injured as a result of abuse of that relationship. <u>White v. Consolidated Planning, Inc</u>., 603 S.E.2d 147 (N.C. App. 2004). Even considering the claim to be a claim for constructive fraud, plaintiff has failed to make plausible allegations that could support the first element which requires a confidential or fiduciary relationship. There simply is no case law that would support imposition of such a relationship based on a friendship or even an intimate friendship.

After *de novo* review, Judge Keesler's recommendation is accepted, plaintiff's Objection is overruled, and the claim against Defendant Doe for fraud or constructive fraud is dismissed. The request for attorney's fees by Defendant Doe will also be denied without prejudice.

### C. Plaintiff's Objections to the Recommendation that Defendant McGinnis' Motion to Dismiss be Granted

The court has next given consideration to plaintiff's Objection to Judge Keesler's recommendation that the claims against Defendant McGinnis be dismissed. Defendant McGinnis was the Commanding Officer in charge of the ROTC program at UNC-Charlotte. After Defendant Doe made allegations to him that plaintiff had engaged in sexual misconduct and/or raped her, Defendant McGinnis cancelled plaintiff's participation in an ROTC trip to Laos on or about June 7, 2012, and recommended to Defendant Doe that she go to the police with her allegations. Defendant McGinnis contends that such date is the date on which he met with plaintiff and cancelled the trip, making the August 12, 2015, Complaint in this matter untimely under N.C.Gen.Stat. §1-52(2) (2016).

Review of the Amended Complaint reveals that all of the actions of Defendant McGinnis of which plaintiff complains occurred before August 12, 2012. See Amended Complaint (#28) at 9-10. Specifically, plaintiff complains of two actions taken by Defendant McGinnis: encouraging Defendant Doe to report the alleged rape to police; and cancellation of the Laos trip. According to the Amended Complaint, the encouragement of Defendant Doe to report her allegations to the police occurred on or before June 7, 2012, id. at 10-11, and the cancelation of the 2012 summer trip to Laos necessarily occurred well before August 12, 2012. Id. at 9.

Plaintiff's argument in his Objection that the statute of limitations did not run until the University disciplinary actions were completed the next year is without merit. "Under

federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999). As the Fourth Circuit has held "it is now well established that a federal cause of action accrues on inquiry notice." Nasim v. Warden, 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*). All claims against Defendant McGinnis are, therefore, properly subject to dismissal as the allegations of the Amended Complaint, taken as true, make it clear that the statute of limitations ran well before this action was filed, making dismissal under Rule 12(b)(6) appropriate. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007).

### D. Defendant McGinnis' Renewed Request for Dismissal Under the *Feres* Doctrine

While not an Objection, Defendant McGinnis asks this court to also give consideration to his other motions to dismiss which the magistrate judge did not reach in light of the dispositive nature of his statute of limitations determination. Having determined that the statute of limitations argument was "sufficiently compelling" to recommend dismissal, the magistrate judge declined to address a number of other arguments Defendant McGinnis asserted. In his response to plaintiff's Objection, Defendant McGinnis revived those arguments and asks this court to address those issues which would provide alternative reasons for dismissal is a reviewing court found the statute of limitations was not violated.

As the district court at all times retains control over the case, Thomas v. Arn, 474 U.S.C. 140, 154 (1985), the court will consider one of the additional grounds for dismissal

raised by Defendant McGinnis. The court will give consideration to Defendant McGinnis' claim of immunity under the *Feres* Doctrine. In doing so, it should not be inferred that the court lacks confidence in Judge Keesler's or its own determination concerning the statute of limitations – it does not. Rather, this court is persuaded that addressing the immunity enjoyed by commanding officers in the military, including ROTC programs, is of such importance as to warrant consideration in the alternative. The court will not reach qualified immunity as the "clearly established right" that plaintiff must be able to assert to survive qualified immunity is so completely foreclosed by the *Feres* Doctrine, as the court will discuss, as to make a qualified immunity analysis an exercise without a purpose.

As to immunity from suit under the *Feres* Doctrine, Defendant McGinnis argues that he, as plaintiff's commanding officer in an Army ROTC program, enjoys immunity from suit by a subordinate based on a service related management or supervision decision. The court agrees. Here, the actions complained of are directly tied to Defendant McGinnis' service as the commanding officer of ROTC program, to wit, a decision to cancel a cadet's participation in an ROTC trip and a decision to counsel one cadet to report her allegations of sexual misconduct and/or rape by another cadet to the police.

Under the structure for suing federal employees recognized by Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), a suit against Defendant McGinnis for actions taken in his capacity as a colonel in the United States Military by a military subordinate fall under the *Feres* Doctrine. Feres v. United States, 340 U.S. 135 (1950). The *Feres* Doctrine provides that a subordinate cannot sue an officer of superior rank that would challenge a military management decision or challenge

the supervision of the service member.  Id. The Court of Appeals for the Fourth Circuit has consistently held that a *Bivens* action for money damages has never been permitted in the military setting and that the assertion of constitutional claims against superiors in the military is barred.  Cicoa v. Rumsfeld, 720 F.3d 505, 517 (4th Cir. 2013). The acts alleged by plaintiff arose out of Defendant McGinnis' management of the military and supervision of service members in the Army ROTC unit he commanded at UNC-Charlotte. United States v. Shearer, 473 U.S. 52, 57 (1985), Clearly, the *Feres* Doctrine bars plaintiff's claims as an enlisted ROTC cadet that Defendant McGinnis' acts in his capacity as the commanding officer of that ROTC unit violated his federally protected rights.  Such claims are, therefore, also dismissed as barred under the *Feres* Doctrine.

## V.       Conclusion

After *de novo* review, the court determines that the recommendation of the magistrate judge is fully consistent with and supported by current law.  Further, the factual background and recitation of issues is supported by the applicable pleadings.  After independent review of the Amended Complaint, the Objections, and the arguments of the respective parties, this court has reached the same conclusions as did the magistrate judge. Based on such determinations, the court will fully affirm the Memorandum and Recommendation and grant relief in accordance therewith.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Memorandum and Recommendation (#62) is **AFFIRMED,** plaintiff's Objections (#65) are overruled, and defendants Motions to Dismiss (#s 30, 42, & 43) are granted in part and denied in part as follows;

(1)     defendant Jane Doe's Second Motion to Dismiss (#30) is granted and her request for attorney's fees is denied without prejudice;

(2)     defendant Gary McGinnis's Motion to Dismiss (#42) is granted based on the running of the applicable statute of limitations and, in the alternative, the motion is granted as Defendant McGinnis enjoys immunity from suit under the *Feres* Doctrine;

(3)     defendants Jonathan Adams, Christine Reed Davis, Arthur R. Jackson, David Broome, Andrew Dies, Mark Lariviere, Katherine Hall-Hertel, The University of North Carolina at Charlotte, and The Board of Governors of the University of North Carolina's Motion To Dismiss Plaintiff's Amended Complaint (#43) is granted in part and denied in part, as follows:

(a)     the Motion to Dismiss is denied as to plaintiff's procedural due process claim;

(b)     the Motion to Dismiss is granted as to plaintiff's substantive due process claim;

(c)     the Motion to Dismiss plaintiff's gender discrimination claims asserted under Title IX and the Equal Protection Clause is granted;

(d)     the Motion to Dismiss based on qualified immunity is granted as to claims made against them in their individual capacities; and

(e)     the Motion to Dismiss based on the statute of limitations is denied and their Motion to Dismiss the punitive damages claim is granted.

Signed: September 6, 2016



Max O. Cogburn Jr.